

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

ROBERT L. PAVONE and VALERIE V.
PAVONE,

                 Plaintiffs,           08 Civ.2389(CLB/LMS)

        -against-

LINDA PUGLISI, individually, ANN     **FIRST AMENDED**
LINDAU, individually, FRANCIS X.       **COMPLAINT**
FARRELL, individually, JOHN SLOAN,
individually, THOMAS WOOD,
individually and the TOWN OF
CORTLANDT, New York,           **Jury Trial Demanded**

                Defendants.

------------------------------------x

     Plaintiffs ROBERT L. PAVONE and VALERIE V. PAVONE, by their attorneys Lovett & Gould, LLP, for their first amended complaint respectfully allege:

### NATURE OF THE ACTION

     1. This is an action for compensatory and punitive damages, proximately resulting from Defendants' on-going conduct as engaged in under color of New York State law, for violations of Plaintiffs' rights as guaranteed them by reason of the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§1983.

**JURISDICTION**

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343. Plaintiff Robert L. Pavone's state law claim is interposed in accordance with the Court's supplemental jurisdiction, 28 U.S.C. §1367.

**THE PARTIES**

3. Plaintiffs ROBERT L. PAVONE (hereinafter "R. Pavone" and/or "Chief")and VALERIE V. PAVONE (hereinafter "V. Pavone") are husband and wife, citizens of the United States, domiciliaries of the State of New York and residents of the Northern Counties. At all times relevant to this complaint prior to March 7, 2008, R. Pavone was the duly appointed Chief of Police of the Defendant Town. V. Pavone at all times relevant to this complaint was employed by the Defendant Town and since May of 2007 until March of 2008 served as the "White Collar Representative" of AFSCME Local 2343 (hereinafter "union") which represents certain employees of the Defendant Town.

4. Defendant LINDA PUGLISI (hereinafter "Puglisi"), who is sued in her individual and personal capacities only, at all times relevant to this complaint was the duly elected Supervisor of the Defendant Town. As such she is a voting member of the Town Board of the Defendant Town (hereinafter "Board").

5. Defendant ANN LINDAU (hereinafter "Lindau"), who is sued in her individual and personal capacities only, at all times relevant to this complaint was a duly elected member of the Board.

6. Defendant FRANCIS X. FARRELL (hereinafter "Farrell"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was a duly elected member of the Board.

7. Defendant JOHN SLOAN (hereinafter "Sloan"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was a duly elected member of the Board.

8. Defendant THOMAS WOOD (hereinafter "Wood"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the duly appointed Town Attorney for the Defendant Town.

9. Defendant TOWN OF CORTLANDT, New York is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of said State.

## THE FACTS

10. In 1999 the Chief commenced a civil rights action in this Court against amongst others Defendant Thomas Wood [Pavone v. Wood, 99 Civ. 4991 (CLB)(hereinafter "**Pavone I**"] alleging *inter alia* violations of his rights as guaranteed

by the First Amendment to the United States Constitution, 42
U.S.C. §1983.

11. On March 20, 2000, Pavone I was settled before the
Hon. Charles L. Brieant on terms set forth in the transcript
of that proceeding a copy of which is annexed and
incorporated in this complaint.

12. In connection with that settlement, provisions of
an earlier agreement pertaining to the Chief's entitlement
to salary benefits pursuant to Section 207-c of the New York
State General Municipal Law as executed by the Town and the
Chief, were incorporated. Annexed is a copy of that
stipulation, dated November 8, 1999, which is incorporated
in this complaint.

13. By reason of the latter settlement agreement:

a. The Town obligated itself to prospectively pay
the cost of health care coverage for the Chief and his
family, and inter alia,

b. The Town agreed to pay the Chief his "207-c
salary benefits" until the Chief either received disability
retirement from the State of New York or he "exhausted any
and all administrative remedies" by reason of which he
sought disability retirement status from the State.

14. Commencing in mid 2007, V. Pavone assumed duties as
the White Collar Representative for her union and in that
connection vigorously and zealously advocated on behalf of

the union and its constituent members against the Town on a
variety of contentious issues including ones pertaining to
health, safety, and the illegal appointment of the Town's
Engineer.

15. As a proximate result of V. Pavone's activities as
a union representative, Defendants in February 2008 entered
into an agreement, expressly opposed as illegal by
Defendants' outside labor counsel (who disclosed his
opposition to a representative of the Chief), to retaliate
against Plaintiffs with the objective of crippling them
financially and *inter alia* silencing V. Pavone's exercise of
associational rights on behalf of the union.

16. In furtherance of that agreement, by resolution
#68-08 adopted by the individually named Defendants (other
than Wood, who upon information and belief drafted that
resolution and urged its passage) on February 25, 2008, the
Chief's Section 207-c benefits were summarily terminated
effective March 7, 2008, despite the facts that:

   a. He had not, and to date still has not exhausted
any and all administrative remedies in connection with his
application for disability retirement - - a circumstance
known to the Defendants, and

   b. Having not exhausted those remedies Defendants
could not lawfully terminate the Chief's Section 207-c

benefits without first according him a pre-deprivation Due Process hearing - - which he was neither offered nor given.

17. By reason of the economic retaliation visited on the Plaintiffs because of V. Pavone's union activities, effective March 8, 2008, she resigned as the union's White Collar Representative and will not prospectively engage in any associational activities protected by the First Amendment with respect to the Town and/or the union.

18. On March    , 2008, Plaintiffs filed this action and on March    , 2008, Defendants were duly served with the summons and complaint.

19. Shortly after that filing and at the direction of Wood, Defendants agreed to take causally related retaliatory action against the Chief with the objective of inflicting additional financial injury upon both Plaintiffs. In that connection:

a. Knowing that the Chief is currently seeking non-disability retirement status (while concurrently pursuing disability retirement status administratively) in order to receive pension benefits/payments, Defendants have repeatedly refused to provide to the State of New York required documentation without which the non-disability retirement benefits cannot be processed and/or paid, and,

b. Knowing that the Chief is entitled as a matter of law to Workers Compensation payments in the absence of

207-c benefits, Defendant Wood (acting with the concurrence of his co-defendants) has prohibited those payments from being made to the Chief.

20. By reason of Defendants' conduct Plaintiffs have been caused to suffer: pecuniary damages; anxiety; emotional upset; public humiliation; public embarrassment; impairment of their constitutionally protected rights, and they have otherwise been rendered sick and sore.

### AS AND FOR A FIRST CLAIM

21. Repeat and reallege as if fully set forth the allegations of fact contained in paragraphs "1" to "20", inclusive.

22. Under the premises Defendants' termination of the Chief's 207-c benefits in retaliation for V. Pavone's exercise of her right of association violated the Chief's rights as guaranteed on a third party standing basis by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

### AS AND FOR A SECOND CLAIM

23. Repeat and reallege as if fully set forth the allegations of fact contained in paragraphs "1" to "20", inclusive.

24. Under the premises Defendants' have intentionally chilled V. Pavone in the exercise of her associational rights in violation of the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A THIRD CLAIM

25. Repeat and reallege as if fully set forth the allegations of fact contained in paragraphs "1" to "20", inclusive.

26. Defendants' termination of the Chief's 207-c benefits in retaliation for V. Pavone's exercise of associational rights violated the Chief's right of intimate association as protected by the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A FOURTH CLAIM

27. Repeat and reallege as if fully set forth the allegations of fact contained in paragraphs "1" to "20", inclusive.

28. In connection with the settlement referenced *supra* a co-plaintiff (Vincent Pagliaroli) of the Chief in Pavone I was identically situated to the Chief with respect to: i) prospective entitlement to Section 207-c benefits until he either was granted disability retirement status or

finally exhausted all administrative remedies with respect

to his application for disability retirement; and ii) upon

exhaustion of all such remedies and termination of Section

207-c benefits to the payment of Workers Compensation

benefits. With respect to the entitlement referenced *supra*

in paragraph "28(i)", another co-plaintiff (Susan Whitmore)

in <u>Pavone I</u> was identically situated to Pagliaroli and the

Chief.

29. Pagliaroli's entitlement to the benefits of Section

207-c was in fact provided until he received disability

retirement and/or exhausted all of his administrative

remedies with respect to same. Upon the termination of his

207-c benefits Pagliaroli in fact received Workers

Compensation benefits - - as did Whitmore.

30. Under the premises Defendants' termination of the

Chief's benefits pursuant to Section 207-c and the

prohibition against payment of Workers Compensation benefits

to him violated his rights as guaranteed by the Equal

Protection Clause of the Fourteenth Amendment to the United

States Constitution, 42 U.S.C. §1983.


**AS AND FOR A FIFTH CLAIM**

31. Repeat and reallege as if fully set forth the

allegations of fact contained in paragraphs "1" to "20",

inclusive.

32. Defendants' termination of the Chief's right to Section 207-c benefits, without benefit of a pre-deprivation hearing, violated his right to Due Process as guaranteed by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A SIXTH CLAIM

33. Repeat and reallege as if fully set forth the allegations of fact contained in paragraphs "1" to "20", inclusive.

34. Defendants' retaliatory refusal to provide factual data to the State required in order to process the Chief's application for non-disability retirement status violated his rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A SEVENTH CLAIM

35. Repeat and reallege as if fully set forth the allegations of fact contained in paragraphs "1" to "20", inclusive.

36. Defendants' retaliatory denial of Workers Compensation benefits to the Chief violated his rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR AN EIGHTH CLAIM

37. Repeat and reallege as if fully set forth the allegations of fact contained in paragraphs "1" to "20", inclusive.

38. Defendants' termination of the Chief's benefits as provided for in the stipulation of settlement in Pavone I constitutes a breach of contract actionable for damages under the common law of the State of New York.

## AS AND FOR A NINTH CLAIM

39. Repeat and reallege as if fully set forth the allegations of fact contained in paragraphs "1" to "20", inclusive.

40. Pursuant to the terms of the stipulation in Pavone I, so long as the Chief was entitled to Section 207-c benefits the terms of *inter alia* his health insurance benefits as provided by the Town were to remain as they were on the date of that settlement - - or in the event of an increase in such benefits during that period of time, the Chief was to receive any such increase.

41. Since in or about 2002 Defendants have unilaterally reduced the Chief's health insurance benefits in material respects.

42. Under the premises Defendants violated Plaintiff's contractual rights, a circumstance actionable for damages under the common law of the State of New York.

WHEREFORE a judgment is respectfully demanded:

    a. Awarding against the individually named Defendants such punitive damages as the jury may impose,

    b. Awarding against all Defendants such compensatory damages as the jury may determine,

    c. Enjoining on a mandatory basis Defendants to forthwith provide to the State the requested data required for processing the Chief's non-disability retirement application,

    d. Enjoining on a mandatory basis Defendants to provide and/or cause to be provided to the Chief forthwith the Workers Compensation benefits to which he is entitled,

    e. Awarding reasonable attorney's fees, costs, and,

     f. Granting such other and further relief as to

       the Court seems just and proper.

Dated: White Plains, N.Y.
      May 17, 2008

                       LOVETT & GOULD, LLP
                       Attorneys for Plaintiffs
                       By:_____
                       Jonathan Lovett (4854)
                       222 Bloomingdale Road
                       White Plains, N.Y. 10605
                       914-428-8401



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
ROBERT L. PAVONE, et. al,

            Plaintiffs,

     -against-                   96 Civ. 4991

THOMAS WOOD, et. al,

            Defendants.
------------------------------------x
                     United States Courthouse
                     White Plains, New York

                     MARCH 20, 2000
                     12:13 o'clock p.m.


B e f o r e:
           HON. CHARLES L. BRIEANT,
                   District Court Judge

A P P E A R A N C E S:

JONATHAN LOVETT, Esq.
KIM BERG, Esq.,
   Attorneys for Plaintiffs

DANIEL RIESEL, Esq.
MICHAEL BOGIN, Esq.
  -and-
S. PITKIN MARSHALL, Esq.
   Attorneys for Town of Cortlandt

PAUL F. DOYLE, Esq.
   Attorney for Linda Puglisi

BRIAN CLARK, Esq.
EDWARD CAPLICKI, Esq.
   Attorneys for Thomas Wood


Court Reporter:  ANGELA A. O'DONNELL, RPR
Proceedings recorded by mechanical stenography, transcript
produced by C.A.T.

2

P R O C E E D I N G S

1

2    THE COURT:  Are you ready to proceed?

3    MR. LOVETT:  Yes, we are.

4    MR. RIESEL:  We are, your Honor.

5    THE COURT:  Please proceed.

6    MR. RIESEL:  Daniel Riesel from Sive, Paget &

7  Riesel for the Town of Cortlandt.  Your Honor, the parties

8  have reached a settlement, and I'm prepared to put that

9  settlement on the record at this time.

12:13P 10    THE COURT:  Please do so.

11    MR. RIESEL:  With respect to the remaining 13

12  plaintiffs in this case, upon the receipt of a general

13  release from the plaintiffs, we will pay $300,000 to the

14  firm of Lovett & Gould, as attorney fees, and the sum of

15  $1,470,000 by check made jointly payable to Lovett & Gould

16  and the plaintiffs in full settlement.  We will do this in

17  30 days from today's date.

18    And, your Honor, we will need an order from this

19  Court to comply with the local rule, both I think from -- I

20  think from the prior matter and this matter, we will supply

21  that to you, if you're willing to sign it.

12:15P 22    THE COURT:  All right.  Now as far as the division

23  of it, I assume I am not concerned with that if everybody

24  assents to it; is that right?

25    MR. LOVETT:  That's right.

ANGELA A. O'DONNELL, RPR - US District Court, SDNY

3

1            MR. RIESEL:  We have some other matters to put on

2    the record.

3            THE COURT:  Don't you think we should first get

4    assent to what you have done so far?

5            MR. RIESEL:  Yes, your Honor, I do.  Thank you.

6            MR. LOVETT:  That's acceptable.

7            THE COURT:  All right.  It's so stipulated on

8    behalf of all the remaining 13 plaintiffs?

9            MR. LOVETT:  Subject to the additional components

10    Mr. Riesel is going to put on the record.

11            THE COURT:  May the record show, as I understand

12    it, 12 of them are in the courtroom.

13            MR. LOVETT:  All but William Wilson, who is on his

14    way over from Rockland County.

15            THE COURT:  You have spoken with Mr. Wilson?

16            MR. LOVETT:  I did, 15 minutes ago.  He was under

17    subpoena in a criminal matter --

18            THE COURT:  He indicated to you you could go ahead

19    and settle the case?

20            MR. LOVETT:  Yes.

21            MR. RIESEL:  With respect to plaintiffs Wilson,

22    Diana and Underwood, in addition to the foregoing, the Town

23    agrees that, should these plaintiffs lose their medical and

24    dental, including their family medical and dental provisions

25    that they have under their current employment, the Town of

4

1    Cortlandt will extend to them medical and dental under the

2    prevailing Collective Bargaining Agreement.

3         With respect to the plaintiff Macaluso, he will

4    receive assurances that he is covered under the Collective

5    Bargaining Agreement which expired on December 31, 1998, for

6    medical and dental.  He will also receive a general

7    reference letter indicating his proper and good service to

8    the Town.

12:16P   9         With respect to those two plaintiffs that are

10    receiving benefits under section 207(c) of the General

11    Municipal Law, so long as they remain on section 207(c) they

12    will receive a prospective longevity payment as if they

13    would be receiving it under the Collective Bargaining

14    Agreement expired on December 31, 1998, between the Town and

15    Policeman's Benevolent Association.

16         I think that's it.

12:17P  17         (Counsel confer.)

18         MR. LOVETT:  May we have a minute, your Honor?

19         THE COURT:  Certainly.

12:19P  20         (Pause.)

12:21P  21         MR. RIESEL:  Judge, I apologize, can you indulge us

22    for another five minutes?

23         THE COURT:  I have not been interrupting you   You

24    have a right to speak with each other and your clients.

25         MR. RIESEL:  Thank you, your Honor.

5

1          THE COURT:  Please don't make the record appear as

2    if I was impatient.

12:22P  3          MR. RIESEL:  Judge.

4          THE COURT:  Those of you who really know me

5    understand that I am never impatient.

6          MR. RIESEL:  That's correct, your Honor, and if I

7    have done that, I'm sure it would be borne out by the

8    record.

12:23P  9          (Pause.)

10          MR. RIESEL:  Your Honor, your indulgence, as

11    anticipated, is appreciated.

12          With respect to Mr. Rao, we will extend that same

13    benefit package to Mr. Rao.

14          With respect to the two officers on 207(c) which I

15    mentioned, those are Officers Pagliaroli and Pavone, I have

16    been asked by counsel to agree to a proposition that any

17    application by Mr. Pagliaroli for a permanent disability

18    will be handled in the same way that we are handling

19    Mr. Pavone's application at this time, which is embodied in

20    the stipulation signed by the Town and Mr. Pavone or his

21    counsel.

12:27P  22          THE COURT:  So agreed to, is it?

23          MR. LOVETT:  Just one clarification.  The benefits

24    that were extended to Rao, the medical/dental --

25          MR. RIESEL:  That's it.

ANGELA A. O'DONNELL, RPR - US District Court, SDNY

6

1          MR. LOVETT:  And with respect to the

2  medical/dental, to the extent extended to any of these

3  plaintiffs, my understanding is that the benefits they get

4  will be no less than is presently provided to employees and

5  officials of the Town.

12:28P  6          MR. RIESEL:  Yes.

7          MR. LOVETT:  In the event there's an increase in

8  the future, my clients will get the benefit of the increase.

9          THE COURT:  They'll get the deal at the time they

10  come within these provisions; yes.

11          MR. LOVETT:  That's acceptable.

12          THE COURT:  All right.  Are you finished?

13          MR. RIESEL:  Yes, I am.

14          THE COURT:  Is there anything else that has to be

15  added before counsel stipulate on the record?

16          MR. LOVETT:  No, your Honor.

17          THE COURT:  What procedure would you like to follow

18  to ascertain the full understanding and assent to settlement

19  by the individual plaintiffs who are here?

20          MR. CLARK:  One thing, just so everything is clear,

21  so all loose ends are tied up.  The release entered into by

22  the plaintiffs will also release specific individual

23  defendants --

24          THE COURT:  All defendants are being released by

25  the settlement, as the Court understands it, but the payment

7

1    is being made by the Town.

2            MR. LOVETT:  It's my understanding the releases are

3    reciprocal.  We're certainly going to release all the

4    defendants.  I assume the defendants are going to release

5    all the plaintiffs.

6            THE COURT:  I suppose so.  This case closes out

7    every claim that could have been brought.

8            MR. RIESEL:  Your Honor, we anticipate receiving a

9    general release for our payment.  We have no claims at this

10   time in these litigations against the defendants.

11           THE COURT:  Against the plaintiffs you mean?

12           MR. RIESEL:  Plaintiffs.

13           THE COURT:  You know, it's a Blumberg form, it

14   doesn't cost anybody anything.

15           MR. RIESEL:  Your Honor, I don't believe that a

16   general -- these individuals are -- we have only one claim

17   in this litigation, as far as I know, and that is an old

18   claim under Rule 11 that we're prepared to release.  I don't

19   believe the Town -- the Town is giving a lot of money here

20   and doesn't have any other claims in this litigation.

21           MR. RIESEL:  There is an outstanding judgment

22   against Mr. Pavone for $10,000, and we will waive that.

23           THE COURT:  All right.  The record will so

24   indicate.

25           Now, do we have the entire understanding of the

8

1    parties on the record?

2         MR. LOVETT:  Yes, we do.

3         THE COURT:  Would you then ascertain each plaintiff

4    who is present understands it and assents to it and

5    understands that they cannot come back?

6         MR. LOVETT:  Do you want me to do that?

7         THE COURT:  If you want to ascertain one by one of

8    the plaintiffs who are here by letting them respond to your

9    inquiry.

10         MR. LOVETT:  May I do it globally?

11         THE COURT:  Yes.

12         MR. LOVETT:  Fine.

13         THE COURT:  I think you have to ask each individual

14    who's here one by one.

12:34P 15         MR. LOVETT:  Robert Pavone, do you understand the

16    terms of the settlement that have been explained to you both

17    now on the record and as by me individually?

18         ROBERT PAVONE:  Yes, I do.

19         MR. LOVETT:  Are those terms acceptable to you?

20         ROBERT PAVONE:  Yes, they are.

21         MR. LOVETT:  Are you agreeing to those terms freely

22    and voluntarily?

23         ROBERT PAVONE:  Yes, I am.

24         MR. LOVETT:  Thank you.

25         Thomas Diana.  Do you understand the terms of the

9

1    settlement as explained to you both by me on a one-on-one

2    basis and as presented by Mr. Riesel on the record?

3        THOMAS DIANA:  Yes, I do.

4        MR. LOVETT:  Are those terms acceptable to you?

5        THOMAS DIANA:  Yes, they are.

6        MR. LOVETT:  Do you understand -- withdrawn.  Do

7    you voluntarily and willfully enter into the settlement

8    agreement?

9        THOMAS DIANA:  Yes, I do.

10       MR. LOVETT:  Thank you.

11       Peter Macaluso, do you understand the terms of the

12   settlement as have been explained to you by me and as put on

13   the record by Mr. Riesel?

14       PETER MACALUSO:  Yes, sir.

12:35P 15    MR. LOVETT:  Are you voluntarily entering into that

16   stipulation of settlement?

17       PETER MACALUSO:  Yes, sir.

18       MR. LOVETT:  Thank you.

19       Susan Whitmore, do you understand the terms of the

20   settlement as presented to you by me and as explained on the

21   record in substantial respect by Mr. Riesel?

22       SUSAN WHITEMORE:  Yes, I do.

23       MR. LOVETT:  Are those terms acceptable to you?

24       SUSAN WHITEMORE:  Yes, they are.

25       MR. LOVETT:  Are you entering into the stipulation

ANGELA A. O'DONNELL, RPR - US District Court, SDNY

10

1   of settlement voluntarily?

2           SUSAN WHITEMORE:  Yes.

3           MR. LOVETT:  Thank you.

4           Jerry Underwood, do you understand the terms of the

5   settlement explained to you by me and separately put on the

6   record by Mr. Riesel?

7           JERRY UNDERWOOD:  Yes, I do.

8           MR. LOVETT:  Are those terms acceptable to you?

9           JERRY UNDERWOOD:  Yes.

10          MR. LOVETT:  You're entering into the stipulation

11  voluntarily?

12          JERRY UNDERWOOD:  Yes.

13          MR. LOVETT:  Your Honor, William Wilson is the

14  next-named plaintiff.  He's not here.  He was subpoenaed in

15  criminal matter in Rockland County.  As I indicated to the

16  Court, I spoke with him by phone approximately 35, 40

17  minutes ago and he agreed to the terms.

12:36P 18          THE COURT:  The record will so indicate as to

19  Mr. Wilson.

20          MR. LOVETT:  Thank you, your Honor.

21          Vincent Pagliaroli.  Mr. Pagliaroli, do you

22  understand the terms of the settlement as explained by me to

23  you and as set forth on the record by Mr. Riesel?

24          VINCENT PAGLIAROLI:  Yes, I do.

25          MR. LOVETT:  Are those terms satisfactory to you?

11

1          VINCENT PAGLIAROLI:  Yes, they are.

2          MR. LOVETT:  Are you entering into the settlement

3    agreement voluntarily?

4          VINCENT PAGLIAROLI:  Yes.

5          MR. LOVETT:  Thank you.

6          Anthony Rao, do you understand the terms of the

7    settlement as have been explained to you by me and as have

8    been put on the record by Mr. Riesel?

9          ANTHONY RAO:  Yes.

10          MR. LOVETT:  Do you understand them?

11          ANTHONY RAO:  Yes.

12          MR. LOVETT:  Are you assenting to them?

13          ANTHONY RAO:  Yes.

14          MR. LOVETT:  Are you doing that voluntarily?

15          ANTHONY RAO:  Yes, sir.

16          MR. LOVETT:  Thank you.

17          Warren Bonds, do you understand the terms of the

18    settlement as put to you by me and as explained on the

19    record by Mr. Riesel?

20          WARREN BONDS:  Yes, I do.

21          MR. LOVETT:  Are those terms acceptable to you?

22          WARREN BONDS:  Yes.

23          MR. LOVETT:  Do you voluntarily agree to settle the

24    case on those terms as apply to you?

25          WARREN BONDS:  Yes.

12

1          MR. LOVETT:  Thank you.

2          Rose Orlando, do you understand the terms of the

3     settlement as explained to you by me and as put on the

4     record by Mr. Riesel?

5          ROSE ORLANDO:  Yes.

12:37P  6          MR. LOVETT:  Are those terms acceptable to you?

7          ROSE ORLANDO:  Yes.

8          MR. LOVETT:  Are you voluntarily entering into the

9     settlement to terminate your litigation?

10          ROSE ORLANDO:  Yes.

11          MR. LOVETT:  Theresa Lowery, do you understand the

12     terms of the settlement that have been explained to you by

13     me and as have been expressed on the record by Mr. Riesel?

14          THERESA LOWERY:  Yes.

15          MR. LOVETT:  Are those acceptable to you?

16          THERESA LOWERY:  Yes.

17          MR. LOVETT:  Are you voluntarily entering into this

18     stipulation to settle the litigation?

19          THERESA LOWERY:  Yes.

20          MR. LOVETT:  Thank you.

21          Mary Schnittert, do you understand the terms of the

22     settlement as have been explained to you by me and

23     Mr. Riesel on the record?

24          MARY SCHNITTERT:  Yes.

25          MR. LOVETT:  Are those terms acceptable to you?

13

1       MARY SCHNITTERT:  Yes.

2       MR. LOVETT:  Are you voluntarily agreeing to settle

3   your claims according to those terms?

4       MARY SCHNITTERT:  Yes.

5       MR. LOVETT:  Any one of the plaintiffs who I just

6   questioned who does not understand that the settlement of

7   this case terminates your claims against the Town and Thomas

8   Wood and Linda Puglisi and that -- did I forget somebody?

12:38P  9       MR. LOVETT:  Warren Bonds?  Crescenzo.  How did

10  I --

11      Christopher Crescenzo, do you understand the terms

12  of the settlement as have been explained to you by me and

13  explained by Mr. Riesel on the record?

14      CHRISTOPHER CRESCENZO:  Yes.

15      MR. LOVETT:  Are they acceptable to you?

16      CHRISTOPHER CRESCENZO:  Yes.

17      MR. LOVETT:  Do you voluntarily enter into the

18  settlement with a view towards resolving this litigation?

19      CHRISTOPHER CRESCENZO:  Yes.

20      MR. LOVETT:  Is there any one of the plaintiffs who

21  does not understand that these settlement terms will end the

22  litigation and you cannot come back to court on any of these

23  claims as against the Town or Wood, Linda Puglisi or any of

24  the towns officials, agents or employees?

25      (No response.)

14

1    MR. LOVETT:  I see no responses.  Thank you.

2    THE COURT:  All right, thank you.

3    MR. RIESEL:  Judge, I want to thank you and put on

4    the record, of course, that the Town has entered into this

5    stipulation agreement to avoid a long, costly trial, and

6    there's no indication -- I understand there's no indication

7    and we don't intend any indication of any wrongdoing by the

8    Town or any of its officials or individuals.

12:39P  9    THE COURT:  All right, the record will so indicate.

10    The Court marks this case settled, trial discontinued.

11    The plaintiff has to mark an exhibit.  You want to

12    offer the Collective Bargaining Agreement or something?

13    MR. LOVETT:  I'm sorry?

14    THE COURT:  Offer an exhibit.

15    MR. LOVETT:  An exhibit?  At this time I'd like to

16    offer Plaintiff's 1.

17    THE COURT:  Received in evidence.

18    (So marked.)

19    MR. LOVETT:  Thank you.

20    THE COURT:  All right.  The Court does appreciate

21    the efforts of the attorneys, and unless you have practiced

22    law, you don't understand how difficult and lengthy these

23    matters can become.  And you ought to know that a jury panel

24    has been waiting downstairs, and they should have been let

25    go on their lunch break, but I didn't regard the case as

15

1    concluded until it was actually done on the record, which

2    now it is.  So we're going to dismiss the panel with thanks.

3                You did say, Mr. Riesel, that the Court had a

4    formal order to sign?

12:40P  5                MR. RIESEL:  Yes, ordering the Town to pay the

6    amount of monies.

7                THE COURT:  What is -- based on what?

8                MR. RIESEL:  My understanding is that it's under

9    the General Municipal Law, Town law 65.  I will submit the

10   order to you this afternoon, probably tomorrow morning.

11               THE COURT:  What did you give as the authority?

12               MR. RIESEL:  Town law section 65.

13               THE COURT:  All right.  Again, I want to say thank

14   you all, and good luck to all of you.  We are all going to

15   go put this litigation behind us, including the Court, and

16   go on and proceed to enjoy the rest of our lives.

17               Court will be in recess.

18               (At 12:41 p.m., proceedings concluded.)

12:41P  19

20

21

22

23

24

25

C E R T I F I C A T E

      I, ANGELA A. O'DONNELL, a Registered Professional Reporter and Notary Public of the State of New York, do hereby certify that the transcript of the foregoing proceedings, taken at the time and place aforesaid, is a true and correct transcription of my shorthand notes.

                        _____
                        Angela A. O'Donnell, RPR

ANGELA A. O'DONNELL, RPR - US District Court, SDNY

207-C STIPULATION BETWEEN, Chief Robert L Pavone and the Town of Cortlandt

WHEREAS, The Town of Cortlandt and Robert L Pavone ("Mr. Pavone") (collectively "the parties"), desire to resolve this pending 207-C matter without further hearings or adjudication, and mutually desire to enter into this negotiated settlement agreement: and

NOW, therefore it is Stipulated and Agreed by the parties for the good and sufficient consideration set forth below that:

1. The Town of Cortlandt shall continue to pay the cost of health care coverage (including medical and dental) for Mr. Pavone and his family until Mr. Pavone's death and thereafter for his survivor pursuant to the attached Town of Cortlandt Resolution No. 156-92 and attached AFSCME Bargaining Agreement.

2. The Town of Cortlandt shall pay to Mr. Pavone the amount of salary Mr. Pavone is currently receiving until Mr. Pavone's application for Police & Fire Retirement for disability incurred in the performance of duty or accidental disability under §363 of the Retirement and Social Security Law is granted by New York State. This is governed by the terms of paragraph 7.

3. Mr. Pavone agrees to be responsible for all costs, attorney's fees, and other expenses associated with any administrative appeal of any denial of his applications for accidental or performance of duty disability retirements under §363 of the Retirement and Social Security Law.

4. The Town of Cortlandt agrees within 30 days after the time that Mr. Pavone stops receiving his full salary pursuant to Section 207-C, to pay Mr. Pavone for any unused time including but not limited to vacation, sick and personal time. The calculation used will be 100% of the value of the accrued time.

5. This agreement between the parties shall not be construed for any purpose as an admission by the Town of Cortlandt, Mr. Thomas F. Wood or any of the parties of any liability or unlawful conduct. The parties acknowledge that this

agreement is being entered into for solely the purpose of avoiding the cost of 207-C proceedings.

6.   Mr. Pavone agrees that if he is granted an accidental disability retirement under §363 of the Retirement and Social Security Law that he will accept such retirement and retire within 30 days of such decision being rendered by the Retirement System.

7.   Mr. Pavone agrees that once he has exhausted any and all administrative remedies prior to, but not including, an Article 78 proceeding, he shall be bound by the determination of the Comptroller on behalf of the New York State Retirement System with respect to this disability.   Specifically, Mr. Pavone acknowledges that The Town of Cortlandt in its sole discretion may rely upon the final administrative determination of the Disability Retirement process as being binding upon Mr. Pavone with respect to his eligibility for 207-C benefits. It is expressly acknowledged by Mr. Pavone that if he fails to receive a disability retirement having exhausted his administrative remedies prior to an Article 78 proceeding, that The Town of Cortlandt may unilaterally discontinue his 207-C salary benefits without the need of an administrative hearing. The Town will not be under an obligation to pay Mr. Pavone his salary during the pendency of an Article 78 proceeding. However, the Town agrees to be retroactively bound by the determination of the Article 78 proceeding including by not limited to 207-C benefits and pay.

8.   Mr. Pavone agrees to timely assist the New York State and Local Police & Fire Retirement System with the processing of his applications. He agrees to timely respond to all of their requests and cooperate in providing of medical information. He also agrees to submit to those medical examinations deemed necessary by the Retirement System.

9.   In the event that Mr. Pavone is granted a Performance of Duty Retirement, he agrees that his Worker's Compensation equivalent benefits will not exceed $300.00 weekly.

10.  Mr. Pavone agrees to keep The Town of Cortlandt, or its representatives, reasonably up to date as to the status of his pending retirement applications.

11.  This agreement may not be modified, altered or changed except upon written consent of all parties wherein specific reference is made to this agreement.

Dated: White Plains, New York
       November 8, 1999.

THE TOWN OF CORTLANDT

By: _____


_____

CHIEF ROBERT L. PAVONE

MAY 12, 1992                                    25

## R E S O L U T I O N

NUMBER 156-92

(RE: EMPLOYMENT & BENEFIT POLICY REGARDING NON-UNION
EMPLOYEES)

WHEREAS, the Town Board has long been desirous
of adopting a Resolution to  formalize an employment
policy with respect to non-union employees of the Town;
and

WHEREAS, it is the desire of the Town Board to
grant to the non-union employees of the Town who work on
a permanent basis, the same benefits as those given to
the union employees; and

WHEREAS, the Town Boards of the past have
established certain additional benefits for non-union or
management employees that have never been formalized in
the form of a Resolution;

NOW, THEREFORE, BE IT RESOLVED, that the Town
Board does hereby grant to all permanent, non-union
employees (management employees) of the Town, the same
financial benefits as those derived from the Collective
Bargaining Agreement including, but not limited to:
Health and Dental Insurance, Sick Time, Vacation Time,
but not including salary or other steps or other monetary
payments; and

BE IT FURTHER RESOLVED, that the Town Board
shall continue the practice of carrying Life Insurance
for these employees at a value of an amount equal to two
(2) times their annual salary;  and

BE IT FURTHER RESOLVED, that the Town will
continue to maintain long term disability insurance for
all permanent, non-union employees; and

BE IT FURTHER RESOLVED, that these employees
shall be entitled to all of the benefits of the
Collective Bargaining Agreement; and

BE IT FURTHER RESOLVED, that all Department
Heads shall be allowed to accumulate up to a total of
THREE YEARS OF VACATION TIME, and any Department Head who
has accumulated more than two years Vacation Time will be
allowed to liquidate up to two (2) weeks of their
accumulated Vacation Time over that amount on an annual
basis, said payment to be made by the Town Comptroller in
any month upon written request of the Department Head.

BY ORDER OF THE TOWN BOARD
OF THE TOWN OF CORTLANDT
HARRIET L. BOYLE
Town Clerk

Adopted on May 12, 1992
At a Regular Meeting
Held at the Community Center